## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

VINCENT E. SPIKER,                )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        Case No. 4:23-CV-338 SPM
                                  )
SCOTT ANDERS, et al.,             )
                                  )
                Defendants.       )

## OPINION, MEMORANDUM AND ORDER

Self-represented plaintiff Vincent Spiker brings this action for alleged violations of his civil rights. Plaintiff initiated this suit by filing a complaint and a "Motion to Proceed in Forma Pauperis and Affidavit in Support -- Prisoner Cases" on March 17, 2023. [ECF Nos. 1- 2]. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). As plaintiff is now proceeding in forma pauperis, the Court must review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a prisoner currently incarcerated at Taft Correctional Institution in Taft, California. Plaintiff failed to submit a prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also*

*Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## The Complaint

Although plaintiff is currently confined at Taft Correctional Institution, the claims he asserts in this case involve purported civil rights violations he sustained while confined at the St. Louis County Justice Center in Clayton, Missouri. Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against six defendants associated with the St. Louis County Justice Center: (1) Scott Anders (Commissioner); (2) Unknown Hayward (Superintendent); (3) Mr. Unknown Walker (Correctional Officer); (4) Mrs. Unknown Walker (Correctional Officer); (5) Mrs. Unknown Farmer (Correctional Officer); and (6) Unknown McKnight (Correctional Officer). Plaintiff brings this action against defendants in both their official and individual capacities.

Plaintiff alleges, in a conclusory manner, that he believes his cell door on the 8th Floor, Unit C of the Administrative Segregation Unit, was unlocked by Correctional Officer Mr. Unknown Walker on February 5, 2023, at approximately 4:20 p.m., for "another offender."

Specifically, plaintiff claims that around 4:20 p.m., Mr. Walker allowed several offenders out of their cell "for recreation," including offender Webber Young Manik Rasid.[1] At this time, plaintiff's cell was also unlocked. Offender Rasid purportedly came to plaintiff's cell door and "put his shower stuff down" and stood there. Plaintiff claims that Rasid stood in a "combative stance" simply waiting outside the cell door prior to the door being opened. Although plaintiff claims that the door was purportedly opened by Mr. Walker "for another offender," he has not provided any facts relative to this assertion. First, he acknowledges that all offenders were let out of their cells together for recreation at the same time. Second, plaintiff has attached a grievance response to his Supplemental Complaint, ECF No. 5, p. 5, indicating that video evidence showed that plaintiff's cell door malfunctioned and was opened by plaintiff himself. "He…opened the door wider and then shut it a little and opened it wider again and then closed it a little when the other inmate came over to his cell and then opened it wider again and came out and the inmates began a physical altercation. After the altercation this inmate returned to his cell and was easily able to close the cell door." *Id.*; *see also*, Fed.R.Civ.P.10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

It appears that although the cell door was unlocked, the door was not actually opened by Rasid, as plaintiff kept the door closed with his body, while Rasid stood outside the door allegedly yelling and "cursing sexual threats" at plaintiff. Plaintiff claims he "acted out of fear and stepped out to keep. . .Rasid from coming in and thier [sic] was a physical altercation and struggle which Mr. Spiker said he thought he was going to [get] physically hurt."

In the Supplemental Complaint, ECF No. 5, p. 3, plaintiff has attached an Incident Report filed by Correctional Officer McGary relating to the February 5, 2023, incident between he and

---

[1]For ease of reference the Court will refer to this offender by his last name, Rasid.

Rasid. *See* Fed.R.Civ.P.10(c). The report indicates that McGary was on the 8th Floor of the Justice Center on that date supervising workers who were cleaning up water from a broken sprinkler head when he heard "tussling" going on the top of C3. He ran to the bottom of C3 and saw Rasid and Spiker "on the ground fighting." At that time, McGary radioed to master control and ran to the top of C3. Spike walked in and "closed his cell." "Shortly after giving a directive, inmate Webber-Young also stepped in his cell and closed the door." McGary reported that although Spiker's cell seemed secure, with the "right amount of force, [it] opened on its own." Spiker was then moved to cell 15. *Id.*

Plaintiff states that he sustained "scrapes and bruises" and was given Tylenol by medical. He was given a conduct violation for engaging in an altercation with Rasid, as well as five (5) days in Administrative Segregation.[2]

Plaintiff additionally claims in a conclusory manner that on March 5, 2023, at approximately 10:00 a.m., he believes his cell door was opened by Mrs. Farmer and Mrs. Walker for offender Kimble. He claims that at this time, he was housed on the B-Wing of the 7th Floor, Cell 15. From the facts as alleged by plaintiff, it appears that all the offenders were out of their cells at the time for recreation, however. Plaintiff does not indicate if the cell doors were open or closed at this time.

That day plaintiff was playing cards with inmate Kimble, and he claims that Kimble was "acting aggressively" towards him. Kimble allegedly got up from the table and was yelling and told plaintiff he was going to "lockdown in [plaintiff's] cell and strip naked and wait until he [came] in so he [could] rape and beat [plaintiff]."

---

[2]Plaintiff has included a copy of the February 9, 2023 Hearing Report from Lt. Angela Stuart. In the Hearing Report, Stuart notes that although it appeared from the video evidence Rasid was the aggressor, Spiker could have remained in his cell and avoided the altercation. Thus, he received five (5) days in Administrative Segregation as punishment. ECF No. 5, p. 5; Fed.R.Civ.P.10(C).

Plaintiff asserts that Kimble then went to plaintiff's cell, shut the door and stayed there. Plaintiff states that he was seen by another inmate standing in the doorway of plaintiff's cell in his boxers yelling, "Come get f*cked!" Plaintiff does not provide any explanation as to why he believes defendants Farmer and Mrs. Walker had anything to do with Kimble going to plaintiff's cell or placing himself inside of plaintiff's cell.

Plaintiff indicates that he informed Mrs. Farmer and Mrs. Walker, who were working at the podium, about Kimble's actions, but "they did not investigate." However, at some point, Kimble left plaintiff's cell, and plaintiff went to the recreation yard. Plaintiff does not indicate how he was aware that the correctional officers "did not investigate" if he was in the recreation yard, except to state in his complaint that another inmate told him of Kimble's actions.

Plaintiff states in his complaint that Kimble told the officers he was locked in the wrong cell. Plaintiff does not indicate how he became aware of these facts if he was in the recreation yard. Additionally, if Kimble told the officers he was locked in the wrong cell, he had to tell correctional officers at that point why he was in the wrong cell and what had occurred. Plaintiff does not explain this anomaly.

Plaintiff asserts that he "informed them [the officers] on a grievance form." Plaintiff has included a copy of his grievance, filed on March 6, 2023, in his Supplemental Complaint. *See* Exh. 5, p. 13; *see* Fed.R.Civ.P.10(c). In his complaint, plaintiff alleges he was "locked up hours later." However, plaintiff does not indicate whether he is referring to the receipt of discipline, or if he simply means he was taken back to his cell after finishing recreation on March 5, 2023. Plaintiff does not elaborate as to what occurred after filing his grievance relating to Kimble's actions except to say that the correctional officers were not disciplined relative to his grievance about them. He claims, however, that Mrs. Farmer and Mrs. Walker called him to the podium after they returned

to work and told him they were scolded for his grievance. He does not indicate that he was retaliated against for allegedly filing the grievance.

In his Supplemental Complaint, plaintiff has attached a March 10, 2023 Response to his Grievance, *see* Exh. 5, p. 12, which states, "Mr. Spiker the inmate in questioned [sic] was removed from your unit and placed on lockdown. He was also placed on your no contacts code to ensure your safety. Any further concerns please [sic] your assigned supervisor." See also Fed.R.Civ.P.10(c).

Plaintiff claims in his Supplemental Complaint that Brian McKnight[3] told him that he watched the video footage of Kimble's behavior on March 5, 2023, and he would have the PREA investigator speak to plaintiff. McKnight claimed that he was aware of Walker and Farmer's rule in the situation and he "did not hold them accountable." *See* Fed.R.Civ.P.10(c). There is no indication that plaintiff was disciplined for reporting Kimble's behavior; however, plaintiff claims in a conclusory statement in his Supplemental Complaint that he believes Farmer and Walker failed to protect him. According to plaintiff's allegations, however, plaintiff was not near Kimble at any time when Kimble was inside plaintiff's cell.

In his complaint, plaintiff claims that the two instances of issues with other inmates, once with Rasid and the other with Kimble, shows a pattern of "failure to protect," at the St. Louis County Justice Center. Plaintiff seeks an injunction to stop defendants from creating an unsafe environment.[4] Plaintiff also seeks damages against defendants.

---

[3]Plaintiff denotes Major Charles McKnight as a defendant in this action. However, he identifies Brian McKnight as the individual who reviewed the video footage of Kimble's behavior from March 6, 2023. The Court believes that both individuals are likely the same defendant McKnight. For ease of reference, the Court will refer to defendant McKnight as Unknown McKnight.

[4]As plaintiff is no longer incarcerated at St. Louis County Justice Center, his request for an injunction is moot. *See Gladson v. Iowa Dept. of Corrections*, 551 F.3d 825, 835 (8th Cir. 2009) (determining that since former Iowa State Penitentiary inmate was "no longer incarcerated at the ISP and subject to the

## Discussion

Based on a careful review and liberal construction of the filings before the Court, Plaintiff has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2)(B). As discussed below, the allegations in the complaint fail to assert sufficient facts to state claims based on failure to protect. Plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    Official Capacity Claims

Plaintiff's official capacity claims against all defendants fail to state a claim and are legally frivolous. For this reason, the Court will dismiss plaintiff's official capacity claims against defendants in this action.

An official capacity suit is a "way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, an official capacity claim against an individual is actually a claim "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("a "suit against a public employee in his or her official capacity is merely a suit against the public employer"); *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (a

---

allegedly offending policy, his claims [for injunctive relief] are moot"); *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (stating that inmate's requests for injunctive relief were moot because he was no longer incarcerated at the South Central Correctional Center, but was in another prison); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (explaining that "an inmate's claims for declaratory and injunctive relief to improve prison conditions were moot when he was transferred to another facility and was no longer subject to those conditions"); and *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions").

"plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Thus, to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

In this case, plaintiff alleges all six defendants are employed by the St. Louis County Justice Center. However, a jail has no independent legal existence and is not subject to suit under § 1983. *See Ketchum v. City of West Memphis, Ark.,* 974 F.2d 81, 82 (1992) (a department or subdivision of local government is not a "juridical," or suable, entity under 42 U.S.C. § 1983). *See also Ballard v. Missouri,* Case No. 4:13-cv-528-JAR (E.D. Mo. Apr. 22, 2013) (holding that "[p]laintiff's claims against the City of St. Louis Department of Public Safety, the St. Louis County Justice Center, the St. Louis City Justice Center, and MSI/Workhouse are legally frivolous because these defendants are not suable entities").

Even if St. Louis County was substituted as the employer, plaintiff's official capacity claims would still be subject to dismissal. Unlike the Justice Center, a local governing body such as St. Louis County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978). However, a local government does not answer "for the injuries inflicted solely by its employees or agents," and is not subject to respondeat superior liability. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). Rather, a local government is narrowly liable for its own unconstitutional misconduct—as perpetrated through its employees—that falls under one of three categories: (1) an official policy; (2) an unofficial custom; or (3) a failure to train, "which is an extension of the same" and serves to evidence an unconstitutional policy or custom. *Marsh v.*

*Phelps County*, 902 F.3d 745, 751 (8th Cir. 2018). Accordingly, rather than implicate the doctrine of respondeat superior, an official capacity claim serves only to address the conduct of a particular official in furtherance of his or her employer's unconstitutional policy or custom. *See Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016). Thus, to sustain a claim against defendants in their official capacities, plaintiff "must prove that [St. Louis County] itself caused the constitutional violation at issue." *Marsh*, 902 F.3d at 751.

Here, plaintiff's complaint is devoid of any allegations that would state a claim of municipal liability. Plaintiff does not allege that St. Louis County itself maintains a specific policy or custom which caused the violation of plaintiff's constitutional rights. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights.

Although plaintiff insists that two insistences of inmate altercations at the Justice Center shows a pattern of "failure to protect" by the officials at the Justice Center, the facts as alleged by plaintiff do not show a pattern. To demonstrate deliberate indifference for purposes of failure to train, a plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).  As discussed above, plaintiff alleges no facts that demonstrate such a pattern.  He does not allege any other incidents of injury to prisoners, nor does he assert that specific employees were not properly trained. In fact, plaintiff only alleges that he got into just one altercation at the Justice Center with another inmate, inmate Rasid, and although he states that he could have potentially had another altercation with inmate Kimble, he

was protected from inmate Kimble when Kimble was moved into another unit when Kimble made threats against him.[5]

To the extent that plaintiff argues that the failure to train "created a policy or custom that allowed the wrong to occur" – this allegation also fails to state a claim under *Monell*. A 'policy' is a deliberate choice to follow a course of action and a 'custom' requires the existence of a **widespread pattern of unconstitutional misconduct by employees**. *See Russell v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible … for establishing final policy with respect to the subject matter in question") (internal quotations omitted); *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (In order to establish a claim of liability based on "custom," the plaintiff must demonstrate, among other things, the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees.). Again, plaintiff does not allege any pattern of unconstitutional conduct, nor does he allege a deliberate choice to follow a course of action. The facts in the complaint are insufficient to state a claim against St. Louis County or its employees in their official capacities.

Furthermore, because plaintiff fails to state a claim of a constitutional violation against any individual defendant, as set forth below, any claim for § 1983 or *Monell* liability against St. Louis County also fails. *See Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861 (8th Cir. 2018) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or Monell liability for the City."); *see also Malone v. Hinman*, 847 F.3d 949, 955-56 (8th Cir. 2017) (finding no §

---

[5]Although plaintiff states that Kimble went into plaintiff's cell during recreation period, plaintiff states that he was not inside his cell during that time, but he was outside for recreation. Thus, he was not in danger during this time.

1983 or *Monell* liability on the part of the city where no constitutional violation by the police officer employee); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) (finding that without a constitutional violation by the individual officers, there could be no § 1983 or *Monell* municipal liability).

## II.   Individual Capacity Claims

### A.  Failure to Allege Personal Liability

Plaintiff has failed to make specific allegations against defendants Unknown McKnight, Scott Anders and Unknown Hayward. Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

It appears that plaintiff is suing Unknown McKnight because he is unhappy that McKnight failed to hold Walker and Farmer accountable for Kimble's poor behavior on March 5, 2023. As plaintiff himself acknowledges, however, Kimble did not harm him on March 5, 2023. Although Kimble originally went to plaintiff's cell, eventually he left the cell. Additionally, plaintiff was never in the same cell as Kimble. Rather, when Kimble was in the cell, plaintiff was in the recreation yard. Damages for mental or emotional harm are not available absent a showing of

physical injury. *Royal v. Kautzky*, 375 F.3d 720, 722 (8th Cir. 2004). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow*, 66 Fed. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)). Here, he does not allege that he suffered any physical injury, *de minimis* or otherwise. Instead, he alleges only mental or emotional harm, which is not compensable in the absence of physical injury.

Furthermore, it appears that plaintiff is suing Anders and Hayward because he believes they are responsible for supervising and running the Justice Center. However, vicarious liability is inapplicable in 42 U.S.C. § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). Rather, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). It is settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011).

As a result of the aforementioned, plaintiff cannot sustain claims for relief against defendants Unknown McKnight, Scott Anders and Unknown Hayward.

**B. Failure to Protect Claims**

**1. Incident with Inmate Rasid on February 5, 2023**

Under the Fourteenth Amendment's substantive due process rights, the State has an affirmative duty to protect a person when the State has put limitations on the person's personal liberty, like in the case of a prisoner. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

To establish a conditions of confinement claim under the Eighth Amendment,[6] a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*,

---

[6]Plaintiff describes himself as a convicted and confined state prisoner in his complaint (ECF No. 1 at 4); however, it is not clear whether plaintiff held this status at the time of the incident or if he was a pretrial detainee. Although the Fourteenth Amendment protects pretrial detainees, it extends to them "at least the same protections that convicted prisoners receive under the Eighth Amendment." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021). Out of an abundance of caution, the Court will analyze this action as if plaintiff is a pretrial detainee.

511 U.S. at 837). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "[P]rison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted).

The Court does not believe that plaintiff has properly alleged the objective component of his failure to protect claim relating to the incident with inmate Rasid on February 5, 2023. Although plaintiff blames Mr. Walker for opening his cell door and causing a risk to his safety, he acknowledges in his complaint that all offenders were let out of their cells together for recreation at the same time. Plaintiff has not properly alleged that Mr. Walker knew of a threat to plaintiff's safety prior to opening all the cell doors together and failed to heed that threat before opening the cell doors together, such that Mr. Walker was deliberately indifferent to the risk of his safety relative to inmate Rasid.

Second, even if plaintiff was not supposed to be out of his cell as of yet, and he is wrong that Mr. Walker had not yet opened his cell door, he has attached to his Supplemental Complaint a grievance response indicating that the video evidence shows that plaintiff's cell door "malfunctioned" and was opened by plaintiff himself. *See* Fed.R.Civ.P.10(c). The document states:

> He…opened the door wider and then shut it a little and opened it wider again and then closed it a little when the other inmate came over to his cell and then opened it wider again and came out and the inmates began a physical altercation. After the altercation this inmate returned to his cell and was easily able to close the cell door.

Although plaintiff claims that he opened his own door out of fear, he nonetheless admits that he opened his own door. Thus, he cannot claim that Mr. Walker opened his cell door or was somehow deliberately indifferent to his safety needs.[7]

Furthermore, plaintiff cannot establish the subjective component of his failure to protect claim. To establish a "conditions-of-confinement" claim, including one based on an alleged failure to protect, see *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), plaintiff must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson,* 501 U.S. at 303). Plaintiff must demonstrate that he suffered "extreme deprivations," meaning that he was denied the "minimal civilized measure of life's necessities." *Id.* at 9 (internal quotation omitted); *see Farmer*, 511 U.S. at 834.

The objective standard that must be satisfied in a conditions-of-confinement claim differs from that applicable in the excessive force context, where the malicious and sadistic use of force by prison officials always violates "contemporary standards of decency." *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (quoting *Hudson*, 503 U.S. at 9); *see also Hudson*, 503 U.S. at 27 (Thomas, J., dissenting) (disagreeing with the Court's holding that serious injury is not required to prove an excessive force claim under the Eighth Amendment when the injury requirement "remains applicable to all other prison deprivations").

Just as an inmate alleging unconstitutional conditions of confinement based on an unreasonable delay in the provision of medical care, *see Wilson*, 501 U.S. at 303, must show that the delay caused objectively serious harm, *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.),

---

[7]Additionally, Correctional Officer McGary indicated in the Incident Report that he was on the 8th Floor at the time of the incident, saw the two men fighting and ran to stop them. By the time he got there, Spiker placed himself back inside his cell, and shortly after being given a directive, so did inmate Rasid. After seeing that plaintiff's cell door could be opened with "the right amount of force," McGary placed plaintiff in a new, more secure cell.

abrogated on other grounds by, *Johnson v. Jones*, 515 U.S. 304 (1995), plaintiff must show that the harm he suffered from a correctional officer's alleged failure to protect him was objectively serious. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir.2008). As noted above, plaintiff could have stayed inside of his cell, but he chose to remove himself from his cell to fight Rasid voluntarily. Even after choosing to fight Rasid voluntarily, he received only "scrapes and bruises," for which he received Tylenol.

Again, because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving v. Dormire*, at 448. "Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Id.* Therefore, a *de minimis* injury cannot form the basis of a failure to protect claim. *Id.* "No clear line divides *de minimis* injuries from others." *Id. See Wyatt v. Delaney*, 818 F.2d 21, 22–24 (8th Cir. 1987) (a light, accidental blow to the face that caused two small scratches inside the prisoner's mouth was *de minimis*); *Chavero-Linares v. Smith,* No. 12-CV-42-LRR, 2013 WL 5655559, at *7 (S.D. Ia. Oct. 15, 2013) (citing cases). *See also Andrews v. Fuoss*, 417 F.3d 813, 815–18 (8th Cir. 2005) (finding a sheriff's forceful blow to the shoulder that left plaintiff with a sore neck, arm, and shoulder as well as a headache and increased post-traumatic stress symptoms is *de minimis); Headrick v. Steph*, No. 4:19-CV-920 ACL, 2019 WL 6050718, at *5 (E.D. Mo. Nov. 15, 2019) (allegations that a plaintiff slipped and fell in a non-handicap shower, was in pain at the time of the fall and received some treatment for skin scrapes, but did not suffer any ongoing pain or injury were *de minimis*). Given several courts' findings that scrapes and bruises are de minimis, this Court cannot find that plaintiff has fulfilled the subjective component of his failure to protect claim relating to the incident with inmate Rasid. Thus, plaintiff's failure to protect claim against Rasid is subject to dismissal.

### 2. Incident with Inmate Kimble on March 5, 2023

Plaintiff claims in a conclusory manner that on March 5, 2023, Mrs. Farmer and Mrs. Walker failed to protect him from inmate Kimble when Kimble entered his cell and threatened to rape and beat him. From the facts as alleged by plaintiff, it appears that all the offenders were out of their cells at the time for recreation. Additionally, as noted above, plaintiff indicates that he was not in his cell at the time Kimble threatened him, but instead, he was in the recreation yard. Moreover, plaintiff did not suffer any injuries because of this incident. Moreover, after plaintiff complained about Kimble's threats, Kimble was moved away from plaintiff and into another unit.

From the facts as alleged by plaintiff, the Court cannot find that plaintiff has stated sufficient allegations for a failure to protect claim in this action. It is subject to dismissal.

### C. Due Process Claim

Plaintiff appears to allege that he was denied due process under the Fourteenth Amendment relative to his five (5) day disciplinary placement in Administrative Segregation for fighting with inmate Rasid. Plaintiff has included a copy of the February 9, 2023 Hearing Report from Lt. Angela Stuart attached to his Supplemental Complaint which indicates that although it appeared from the video evidence Rasid was the aggressor, Spiker could have remained in his cell and avoided the altercation. Thus, he received five (5) days in Administrative Segregation as punishment. ECF No. 5, p. 5.

"In order to prevail on a Fourteenth Amendment due process claim, [plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir. 2003). Plaintiff does not allege that he was denied of life or property, so he must identify a liberty interest to maintain his due process claim. *Id.* at 847.

In *Sandin v. Conner*, the Supreme Court found that prisoners have a liberty interest, protected by the Due Process Clause, in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). There is no bright-line rule as to what constitutes an atypical and significant hardship. *Smith v. McKinney*, 954 F.3d 1075, 1081 (8th Cir. 2020) ("The Supreme Court has acknowledged 'the difficulty of locating the appropriate baseline' by which to measure what constitutes an atypical and significant hardship, but it has not resolved the issue." (quoting *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005))). However, courts should consider both "[t]he duration and degree of restrictions" to determine "whether a change in conditions imposes such a hardship." *Id.* at 1080 (quoting *Hamner v. Burls*, 937 F.3d 1171, 1180 (8th Cir. 2019), as amended (Nov. 26, 2019)).

To the extent plaintiff is claiming a due process violation because he was assigned five (5) days in Administrative Segregation for fighting with Rasid, his argument is misguided. Plaintiff does not have a liberty interest in the procedures by which the State of Missouri believes it can best determine how he should be confined. *Phillips*, 320 F.3d at 847; *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Griffin-El v. Delo*, 34 F.3d 602, 604 n.3 (8th Cir. 1994) (inmate does not have a liberty interest in a specific procedure).

A prisoner has no constitutionally protected liberty interest in remaining in a less restrictive prison environment. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997). The Eighth Circuit has consistently held that administrative and disciplinary segregation are not atypical and significant hardships. *Portley–El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). Additionally, prisoners do not

have a liberty interest in avoiding temporary confinement in Ad-Seg or Dis-Seg because such punishment does not create an "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 482–86 (no "liberty interest" implicated by thirty (30) days in disciplinary segregation); *see also Ballinger v. Cedar County*, 810 F.3d 557, 562-63 (8th Cir. 2016) (no "liberty interest" implicated by one year in solitary confinement); *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (no "liberty interest" implicated by nine months in administrative segregation); *Phillips*, 320 F.3d at 847 (no "liberty interest" implicated by thirty-seven (37) days in isolation and loss of privileges of contact visitation, exercise, and chapel, even if demotion to segregation was without cause); *Portley-El*, 288 F.3d at 1065–66 (no "liberty interest" implicated by thirty (30) days in punitive segregation); *Kennedy v. Blankenship*, 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996) (no "liberty interest" implicated by thirty (30) days in punitive segregation, which included the suspension of mail, telephone, visitation and commissary privileges). As a result, plaintiff's due process claim is subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 2] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to any defendant because the complaint fails to state a claim upon

which relief can be granted. Plaintiff's claims against all defendants are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED AS MOOT**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 5th day of December, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE